Francisca TORRES, Appellant,

v.

Honorable Richard SCHWEIKER, Secretary of Health and Human Services, Appellee.

No. 81–2700.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) May 24, 1982.

Decided June 30, 1982.

Joel M. Solow, Kenneth E. Walker, Freeman & Bass, P.A., Newark, N. J., for Torres.

W. Hunt DuMont, U. S. Atty., Anne C. Singer, Asst. U. S. Atty., Newark, N. J., for Schweiker.

Before SEITZ, Chief Judge, and SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Francisca Torres appeals from the district court's grant of summary judgment affirming the Secretary of Health and Human Services' decision to terminate benefits contingent upon her continued disability. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

Torres applied for disability insurance benefits in 1978. The Secretary determined that she suffered from depressive neurosis and was entitled to benefits. In January, 1980, Dr. Talaxi Shah examined her at the request of the Secretary. After Dr. Shah's examination, the Secretary determined that Torres' medical condition had improved and that she was no longer disabled. Her disability insurance and Supplemental Security Income benefits were terminated in March 1980. The administrative law judge (ALJ), affirmed by the Appeals Council, upheld the decision to terminate, which thus became the final decision of the Secretary. Torres sought review in the district court pursuant to 42 U.S.C.A. § 405(g) (West Supp.1982) and 42 U.S.C. § 1383(c)(3) (1976). The district court granted the Secretary's motion for summary judgment. Torres appeals.

Torres raises two issues in this court: (1) whether substantial evidence supports the Secretary's determination; and (2) whether the district court should have remanded to the Secretary for consideration of new evidence.

The parties agree that Torres is not entitled to benefits unless she is disabled, *i.e.*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 423(d)(1)(A) (1976); 42 U.S.C. § 1382c(a)(3)(A) (1976).

Torres is disabled within the meaning of the preceding sections "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A) (1976); 42 U.S.C. § 1382c(a)(3)(B) (1976).

The parties also agree that a claimant such as Torres has the burden of proof, or risk of nonpersuasion, in the initial proceeding of showing that she is "unable to return to her customary occupation." *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). If a claimant makes such a showing, then the Secretary has the burden of proving that the claimant "has the capacity to perform jobs that exist in the national economy." *Id.*

The proceeding under review, however, was initiated after the Secretary's determination to terminate Torres' benefits. Torres argues that under these circumstances the Secretary's prior finding of her eligibility for benefits makes out a *prima facie* case of her continuing disability and entitlement to benefits. Under her theory, the burden of proof shifts to the Secretary to show that she is no longer disabled. The Government argues that the burden of proof as to disability remains on the claimant in a proceeding to terminate benefits. There is a split of authority as to which view is the better one. *See Schauer v. Schweiker*, 675 F.2d 55, 57–59 (2d Cir. 1982) (discussing the cases). *Compare Cassiday v. Schweiker*, 663 F.2d 745, 747, 749 (7th Cir. 1981) (burden shifts to Secretary), *and Miranda v. Secretary*, 514 F.2d 996, 998 (1st Cir. 1975) (same), *with Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir. 1981) (per curiam) (burden does not shift), *and Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972) (same).

■ Ordinarily, it is the administrative factfinder rather than the reviewing court that is concerned with the burden of proof, unless the factfinder placed the burden of proof on the wrong party. In this case we decide the question because the ALJ did not explicitly state to whom he allocated the burden of proof, and we think the factual question of disability or no disability is sufficiently close that the Secretary's decision of the factual question might have turned on who had the burden of proof.

■ We believe the view that the burden of proof remains with the claimant in a termination proceeding is the better one. First, there is support for that view in the Supreme Court's description of termination procedures in *Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), where the Court stated that, "[i]n order to establish initial and continued entitlement to disability benefits a worker must demonstrate that he is [disabled]," and that, "[t]o satisfy this test the worker bears a continuing burden of showing, by [appropriate medical means]," that he is disabled.

Second, there is support in the language of the statute, which states generally that, "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5) (1976). This broad language is supportive of a reading of the statute that would place the burden of proof as to the medical basis of a finding of disability on the claimant at all times.

Third, we believe that the allocations of the burdens of proof in *Rossi* provide guidance on how the burden of proof should be allocated in a proceeding to terminate benefits. Although the cases on which *Rossi* relied do not appear to explain why the Secretary has the burden of showing that the claimant "has the capacity to perform specific jobs that exist in the national economy," we believe that the rule is correct even though the language of the statute appears neutral as to who has the burden of proof. The *Rossi* rule is consistent with the recognition that information as to the availability of jobs in the national economy is sophisticated information that most individuals do not have the resources to prove or disprove. The Secretary, on the other hand,

has vast resources and information at his disposal. Thus, considerations of fairness and policy require that the Secretary bear the risk of non-persuasion on the element of disability on which the Secretary is in a better position than the claimant to introduce evidence. We do not believe any such considerations are present in the instant case. In the absence of such considerations, Torres should carry the same burden as a claimant has in an initial proceeding to establish disability under the statute.

Thus, we hold that in a termination proceeding the claimant has the burden of proving that she is unable to return to her customary occupation. Any error the ALJ might have made in regard to the burden of proof could not have affected his decision on disability, and thus we turn to the question whether there is substantial evidence to support the Secretary's decision.

■ The evidence in support of Torres' claim is sketchy. She relies primarily on the August 1978 report of Dr. Harvey Shwed, which was also the primary basis for the initial determination of disability. Dr. Shwed's report diagnosed her as suffering from depressive neurosis. He found that:

> Her attention span, ability to concentrate and reasoning, capability to judge is poor. . . . [S]he has frequent nightmares. She indicates a pan-phobia particularly about leaving the home. She indicates suicidal ideations. Her memory and general fund of knowledge and insight are all poor. She was oriented to time, place and person.

Additionally, a June 1980 report signed by Dr. Anwar Ghali of the New Jersey Medical School stated that Torres had a "history of severe depression and anxiety." It noted that she was then undergoing chemotherapy in the form of Mellaril. It concluded that she could not "engage in gainful employment." The ALJ also considered the aforementioned report of Dr. Shah. In it Dr. Shah concluded that Torres "is able to

follow simple instructions, perform simple tasks and with little help and medication she may be able to adapt to a working situation."

The ALJ found that "medical evidence of record subsequent to the cessation of benefits indicates that [Torres'] emotional disorder has markedly improved." The ALJ also found that Torres "retains the residual physical and mental functional capacity to engage in the degree of sustained work activity required of her essentially light job as a packer, assembler or machine operator." To reach these conclusions, the ALJ relied on the report of Dr. Shah, Torres' appearance and behavior at the hearing the ALJ conducted, and the lack of persuasive evidence submitted on Torres' behalf. The ALJ discounted the report of Dr. Ghali because of a "lack of detailed positive mental status and other findings to support [its] opinion of disability." We believe substantial evidence supports the ALJ's findings, primarily for the reasons stated in the unpublished opinion of the district court.

In regard to the substantial evidence review, Torres also raises some points not addressed by the district court.[1] She notes that Dr. Shah does not speak Spanish, that she speaks only Spanish, and that Dr. Shah's examination of her was conducted through her brother, acting as an interpreter. Torres argues that this procedure undermined the validity of Dr. Shah's evaluation of her mental state. While having an interpreter probably detracts from a psychiatric examination, we do not think that the examination is therefore valueless. Much of Dr. Shah's evaluation appears dependent on information that would not be affected by the presence of an interpreter. For example, "[h]er memory was fair; . . . her general knowledge was fair; . . . she was able to do simple calculations. She denied any hallucinations or delusions. . . . She is able to manage her own benefits."

It is true that Dr. Shah concluded that she suffered from depressive neurosis, the

---

1. The record before this court does not indicate whether these points were raised before the district court.

same diagnosis that originally provided the basis for a finding of disability. Nevertheless, there is substantial evidence in the record to support the conclusion that Torres' depressive neurosis was less severe than it previously had been.

Additionally, Torres points out that the ALJ noted that twice in the administrative hearing Torres began crying for no apparent reason. Nevertheless, the ALJ found that Torres "did not exhibit deficiencies in her ability to think reason, remember, or communicate at the hearing." The crying incidents, we think, do not indicate more than that Torres is, as diagnosed, still suffering from depressive neurosis.

Thus, although it is a close question, we think there is substantial evidence to support the Secretary's decision.

Torres' second argument stems from 42 U.S.C.A. § 405(g) (West Supp.1982), which in part provides that the district court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The district court denied Torres' request to introduce new medical evidence.

The district court assumed that Torres' further medical evidence was material, but found that she did not show good cause for failing to incorporate the evidence in a prior proceeding. One of the district court's reasons for so finding was that "[Torres'] memorandum does not state any reason whatsoever for failing to produce the additional evidence at prior proceedings." Torres has submitted an affidavit from her former attorney suggesting that good cause exists because neither she nor her former attorney could afford to obtain additional psychiatric examinations. This affidavit, however, was not presented to the district court. Thus, whatever its persuasive value would be had it been presented, we cannot rely on it to overturn the district court's decision.

We will affirm the judgment of the district court.