## Flora MUSGROVE

v.

## Richard S. SCHWEIKER, Secretary of Health and Human Services.

Civ. A. No. 81–3936.

United States District Court,
E.D. Pennsylvania.

June 18, 1982.

On Motion for Relief from Judgment
Sept. 29, 1982.

Eric J. Fischer, Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Thomas A. Dougherty, Jr., Asst. Regional Atty., Dept. of Health & Human Services, Region III, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

This is an action under the Social Security Act (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to review the final decision of the Secretary of Health and Human Services (Secretary) terminating claimant Musgrove's Supplemental Security Income (SSI) benefits and denying her application for Social Security Disability (SSA) benefits. For the reasons which follow, the decision of the Secretary to terminate SSI benefits will be reversed and the decision of the Secretary to deny SSA benefits will be remanded for further proceedings.

### SSI Benefits—Termination

Claimant Musgrove began receiving SSI benefits at the time of the inception of the SSI program in January 1974. On June 3, 1980, she was notified that her medical condition was not disabling as of August 1979 and that she was last disabled for SSI benefits in October 1979. As a result, her SSI benefits were terminated. The claimant appealed and on February 2, 1981, a hearing was held before an ALJ. Claimant and her attorney attended that hearing. Following the hearing, the ALJ determined that, for purposes of SSI benefits, the claimant could not return to her former employment as a sewing machine operator but did retain the residual functional capacity to do sedentary work as defined by the Act. He determined that she was therefore not disabled under the Act as of August 1979. Subsequently, the Appeals Council upheld the decision of the ALJ and the decision became the final one of the Secretary as of July 21, 1981.

In his opinion, the ALJ reviewed the testimony and evidence presented under the standard utilized when an applicant makes an initial application for SSI benefits. The claimant argues that in so doing the ALJ applied the wrong standard of law in determining whether Mrs. Musgrove's SSI bene-

fits were properly terminated. It is claimant's position that benefits, once granted, may only be terminated upon a proof of some medical improvement or clear prior error in the initial determination of eligibility. I agree.

■ The issue of what must be shown before the Secretary may terminate disability benefits has not yet been addressed by the court of appeals for this circuit. I have in a previous opinion been guided by the Court of Appeals for the First Circuit in *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1st Cir.1975). *See Shaw v. Schweiker,* 536 F.Supp. 79 (E.D.Pa.1982). The *Miranda* court held that

> once having found a disability, the Secretary may not terminate the benefits without *substantial evidence* to justify so doing. This will normally consist of *current evidence showing that a claimant has improved* to the point of being able to engage in substantial gainful activity; *but it might also consist of evidence that claimant's condition is not as serious as was at first supposed.*

*Miranda, supra* at 998 (emphasis added). *Miranda* thus permits termination only upon the Secretary presenting substantial evidence that proves either (1) improvement to the point where the claimant is able to engage in substantial gainful activity or (2) claimant's condition is "not as serious as was first supposed." In *Shaw, supra,* I concluded that the second ground for termination applies only to those situations involving newly discovered evidence or a clearly erroneous interpretation of evidence in the initial granting of benefits. After a final determination of disability, if a termination of benefits is effected without a showing of either improvement or newly-discovered evidence, such a termination must necessarily be based on whim, caprice or an impermissible relitigation of facts and determinations already finally decided.

Elsewhere in this circuit, Judge Ziegler of the Western District of Pennsylvania held in accord with the First Circuit when he determined that, before benefits may be terminated, there must be substantial evidence amounting to a showing of improvement. *Timblin v. Harris,* 498 F.Supp. 1107, 1108 (W.D.Pa.1980).

Early this year, the Court of Appeals for the Ninth Circuit addressed the issue of the appropriate legal standard in "cessation" or "termination" cases. *See Patti v. Schweiker,* 669 F.2d 582, 586–87 (9th Cir.1982). The Ninth Circuit held that, once the Secretary has determined that a claimant's disability has ceased, the burden of proof to establish otherwise lies with the claimant, since the claimant's burden is a continuing one which does not shift after an initial ruling of disability. However, "[i]n an appropriate case . . . a prior ruling of disability can give rise to a presumption that the disability still exists. 'Once evidence has been presented which supports a finding that a given condition exists, it is presumed in the absence of proof to the contrary that the condition has remained unchanged.'" *Id.* at 586–87, *quoting Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973). Thus, the burden of proof does not shift from the claimant, but the existence of the presumption following an initial determination of disability serves to "impose 'on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption.'" *Patti, supra* at 587, *quoting* Fed.R. Evid. 301. *See also Rivas, supra,* and *Prevette v. Richardson,* 316 F.Supp. 144, 146 (D.S.C.1970) (Once claimant meets initial burden of proving disability, in the absence of proof to contrary, there is presumption that the condition of the claimant remains unchanged).

I find the *Patti* decision to be consistent with my holding in *Shaw* and the decision of the First Circuit in *Miranda.* Assuming that a valid initial determination of disability was made by the Secretary in regard to Mrs. Musgrove, she is entitled to a presumption that her disability still exists, although the burden is still on her to prove her case:

> All the presumption does is impose on the Secretary a burden to come forward with evidence that her condition has changed. Whether that burden has been met is a

judgment to be made initially by the Secretary, and that judgment cannot be overturned on appeal if it meets the "substantial evidence" standard. But where ... there is essentially no evidence to support a conclusion that the claimant's condition has changed, the substantial evidence test has not been met.

*Patti, supra* at 587.

This determination as to the appropriate standard of law to be applied in cessation cases does not, however, resolve the dispute before me.

■ Because of the circumstances surrounding Mrs. Musgrove's entry into the SSI program, an issue is raised as to whether there was, in fact, an initial determination by the Secretary of Mrs. Musgrove's disability. Mrs. Musgrove was officially put on the Pennsylvania *state* disability rolls in late 1973. At the inception of the federal SSI program in January 1974, Mrs. Musgrove was transferred to the federal SSI disability rolls as a result of a one-time transfer of persons disabled under state programs to SSI. A brief review of the legislative history of the SSI program and this one-time transfer under which individuals like Mrs. Musgrove became SSI recipients provides necessary background.

In October 1972, Congress repealed the categorical assistance program which had provided federal grants to state-administered disability programs. *Finnegan v. Matthews,* 641 F.2d 1340, 1342 (9th Cir. 1981); 42 U.S.C. § 1351–55, Pub.L. No. 92–603, 86 Stat. 1484 § 303 (repealed October 30, 1972). At the same time Congress provided for a program entitled Supplemental Security Income for Aged, Blind and Disabled (SSI), in which the federal government assumed the burden of providing benefits directly to certain disabled individuals and established uniform eligibility criteria. The SSI program became effective in January 1974. 42 U.S.C. §§ 1381–83.

In its original form, the SSI program included a "grandfather clause," which provided that persons who, in December 1973, were receiving benefits under a state plan which had been in effect as of October 1972 would *automatically* be considered disabled for purposes of the SSI program. Pub.L. No. 92–603; *Finnegan, supra* at 1342; *Tatum v. Mathews,* 541 F.2d 161, 163 (6th Cir.1976); *Ryan v. Shea,* 525 F.2d 268, 270 (10th Cir.1975). On December 31, 1973, one day before the SSI program was to go into effect, the grandfather clause was amended in response to the perceived "wholesale" number of persons who had been entered onto state disability rolls in anticipation of the automatic transfer to SSI rolls. The amendment or so-called "roll-back" provision required that, in order to qualify for automatic disability status under SSI, an applicant had to have received benefits under a state plan for at least one month before July 1, 1973, as well as in December 1973, and been continuously disabled under the state plan. Pub.L. No. 93–233, § 9 (December 31, 1973); *Ryan, supra* at 271; *Johnson v. Mathews,* 539 F.2d 1111, 1115 (8th Cir.1976). In other words, after this amendment, individuals who were receiving state disability benefits as of December 1973 were *conclusively* presumed to meet federal standards only if they had also been receiving those benefit for at least one month prior to July 1973 and remained continuously disabled. *Ryan, supra* at 271; *Johnson, supra* at 1114. Thus, Mrs. Musgrove, who was admitted to the state disability program in late 1973 would not be automatically entitled to SSI benefits as a "grandfatheree" ("grandmotheree"?) and would not be conclusively presumed to be disabled under SSI.

The Secretary was then faced with the disposition of those individuals like Mrs. Musgrove, termed "rollback cases," who had been on state disability rolls as of December 1973 but not before July 1, 1973. In order to avoid a harsh result to these individuals, the Secretary utilized a statutory provision, "ostensibly aimed at initial applicants who were found presumptively disabled, to continue payments to persons who had not yet been initially determined to be qualified." *Johnson, supra* at 1115; *see* 42 U.S.C. § 1383(a)(4)(B). By regulation, the Secretary classified rollback cases as *presump-*

*tively* disabled, which permitted them to receive benefits for up to three months until an initial determination of eligibility could be made. *See* 20 C.F.R. § 416.954. When it became apparent that three months was not a sufficient time within which to process rollback cases and make initial determinations of SSI eligibility, Congress, recognizing that abrupt cessation would be harsh, provided that pending determination of eligibility the Secretary could continue to pay presumptive benefits to rollback cases until the end of 1974. Pub.L. No. 93–256, § 1 (Mar. 28, 1974); *Ryan, supra* at 271. Under the presumptive disability status of rollback cases, once the Secretary made a determination that an individual was not disabled under SSI standards, benefits ceased immediately, although the unsuccessful claimant had the right to have this determination reconsidered in a proceeding where notice and hearing rights were provided. *Johnson, supra* at 1115. The initial determination was made in many cases on the basis of a "paper review." *Id.; Tatum, supra* at 163; *Ryan, supra* at 271.

The administrative burden on the Secretary to process and evaluate these rollback cases was great and it became clear that all such cases could not be evaluated before the end of 1974. The administration continued to pay benefits past December 1974 until an initial determination of disability on each rollback case could be made. The Secretary continued to make initial determinations of disability and terminated benefits to those found to be non-disabled under the Act. *See DeLao v. Califano,* 560 F.2d 1384, 1386 (9th Cir.1977).

The Secretary began paying Mrs. Musgrove SSI benefits in January 1974. Mrs. Musgrove was never notified of any challenge to her status as disabled under the Act until 1980, when she was notified that her disability had ceased as of August 1979. Benefits were paid throughout that period without interruption.

Until the hearing on the cross-motions for summary judgment in this case, neither any representative of the Secretary nor the ALJ had questioned Mrs. Musgrove's SSI status as disabled prior to August 1979. At the hearing, however, counsel for the Secretary posited that the decision to terminate benefits as of October 1979 may have been, in fact, the first determination of disability made by the Secretary since Mrs. Musgrove's entry to the SSI rolls. As a result, argues counsel for the Secretary, Mrs. Musgrove is not entitled to the application of the principles set forth in *Miranda, Patti,* or *Shaw* for cessation or termination cases, since no previous valid determination of eligibility had been made.

The Secretary has offered nothing to support his contention that the 1979 determination to terminate benefits came about as a result of the first SSI review of Mrs. Musgrove's case since 1974. Absent something to support this statement, I find the Secretary's bare assertion to be incredible. Review of all rollback cases commenced immediately upon enactment of the Act. Initially three months, then one year, was provided for such review. Although all cases could not be reviewed within this one-year period and presumptive benefits were paid following December 1974 pending initial review, I cannot accept that it took until late 1979 for someone to complete the *initial* review of the record. Undoubtedly, the wheels of a bureaucracy like the Social Security Administration turn slowly. Nonetheless, it would show in my view unconscionable disregard for the wishes of Congress for the Secretary to pay, without question, benefits from January 1974 to late 1979 without ever determining whether Mrs. Musgrove was eligible for benefits under the Act. Moreover, the record reveals that representatives of the Secretary who reviewed Mrs. Musgrove's record in 1979 stated that the "state plan [was] *last met* 78/79." Exhibit 5. Section 416.994(e) of the Code of Federal Regulations provides that persons who became entitled to benefits because they were found to be disabled under a state plan may have benefits terminated, *inter alia,* when the disability does not meet the criteria of that state plan. Thus, Mrs. Musgrove's case could have been reviewed under state or federal criteria. The above notation by the representatives

of the Secretary may indicate a review by them using state criteria.[1]

In addition, those same representatives indicated that "disability/blindness ceased on [10/79] because . . . impairment *no longer* of sufficient severity to prevent SGA [substantial gainful activity]." Exhibit 5. In the absence of anything to the contrary,[2] this evidence establishes that some prior review of Mrs. Musgrove's case had been undertaken before the decision to terminate SSI benefits.

I, therefore, conclude that Mrs. Musgrove's case had been evaluated by the Secretary and an initial determination of eligibility under Act criteria made prior to termination of benefits.

Because of this prior determination of eligibility by the Secretary, I further conclude that the ALJ utilized the wrong standard of law in upholding termination of SSI benefits. Since the record does not support a finding of a change in condition amounting to improvement or a clear error in the initial granting of benefits, I will reverse the decision of the ALJ and order the Secretary to pay SSI benefits to Mrs. Musgrove.

### SSA Benefits

■ Mrs. Musgrove filed an application for Social Security Disability (SSA) benefits on June 14, 1979. Since she was fully insured under the Act for SSA purposes through September 30, 1973, the burden was on her to prove that she was disabled under the Act before that date. The Social Security Administration denied SSA benefits to Mrs. Musgrove and this issue was

1. It should be mentioned that I am unpersuaded by the argument of counsel for the Secretary that, because Mrs. Musgrove's records were reviewed under state and federal criteria, she must be a "grandfatheree" rather than a "rollback" recipient. It is true that 20 C.F.R. § 416.907 provides:

You will also be considered disabled for payment of supplemental security income benefits if—
(a) You were found to be permanently and totally disabled as defined under a State plan approved under titles XIV or XVI of the Social Security Act, as in effect for October 1972;
(b) You received aid under the State plan because of your disability for the month of December 1973 and for at least one month before July 1973; and
(c) You continue to be disabled as defined under the State plan.

However, section 416.944(e) does not expressly limit *review* under both criteria to grandfatherees. Moreover, Mrs. Musgrove clearly did not meet the statutory requirements for grandfatherees.

2. In such a situation, it is up to the Secretary to provide all its records concerning the claimant so that the lack of an initial evaluation can be documented. While Mrs. Musgrove never received notice that her claim had been reviewed favorably, in many cases a "paper review" was done and it appears that claimants were not notified unless a decision of non-disability was rendered.

I do not, likewise, accept the argument of the Secretary that requiring a showing of improvement or clear prior error in rollback cases creates an insurmountable burden for the Secretary. Even in "grandfatheree" cases, where no initial determination of disability was made and transfer from state to federal rolls was automatic, the Secretary has not been permitted to terminate benefits without such a showing.

It is relatively easy to locate the former state statute based on which a grandfatheree was ruled to be "disabled;" however, even the wisdom of hindsight will often be insufficient to allow an ALJ to understand fully how a state disability statute had been routinely interpreted and applied by the relevant administrators. Hence, it is indeed difficult, if not impossible, for an ALJ to properly assess whether a recipient is "continuously disabled" under the "complete" state standard. An ALJ's inquiry must therefore focus on whether a clear and specific error had been committed during the previous state determination of eligibility and on whether the recipient's medical condition has materially improved. Absent a finding of clear and specific error in the earlier determination a recipient must logically have been "disabled under a state plan;" absent a finding of subsequent material medical improvement a recipient must logically still be disabled "as so defined." The words of the statute could scarcely be clearer in providing that it is the recipient's condition and not the identity of the enforcing agency which must change in order to terminate disability benefits. The Secretary may not terminate benefits absent a showing of previous clear and specific error or medical improvement which is sufficient to establish that an applicant is no longer "continuously disabled as so defined."
*Finnegan v. Matthews,* 641 F.2d 1340, 1344–45 (9th Cir.1981) (footnotes omitted).

presented at the hearing before the ALJ held February 2, 1981. The ALJ concluded that the record did not contain any medical evidence prior to September 30, 1973, which would establish that Mrs. Musgrove had an impairment as of that time which would have prevented her from returning to her former job as a power sewing machine operator.

As discussed in the section of this memorandum concerning SSI benefits, Mrs. Musgrove, in 1973, was classified as disabled by the Commonwealth of Pennsylvania. On August 31, 1973, one month before the date on which Mrs. Musgrove was last insured for SSA purposes, the Pennsylvania Department of Public Welfare (DPW) moved to place her in the DPW "Aid to Disabled" category and the claim was processed and finalized on December 14, 1973. The ALJ gave no evidentiary weight to the state's determination of Mrs. Musgrove's disability in making his decision that she was not disabled before September 30, 1973. In addition, since the hearing the claimant has come into possession of summaries of certain records of the DPW which she was unable to previously obtain and which provide some insight into Mrs. Musgrove's condition before September 1973.

The Third Circuit has made clear that "[a]lthough findings by other agencies are not binding on the Secretary, they are entitled to weight and *must* be considered." *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.1979) (emphasis added); *Charlton v. Schweiker,* No. 81–2121, slip op. at 2 (E.D.Pa. Sept. 28, 1981).

Because the ALJ in this case did not take into consideration the prior evaluation of disability by the DPW and because newly-discovered evidence sheds light on Mrs. Musgrove's condition before September 30, 1973, the case must be remanded for further evaluation of Mrs. Musgrove's eligibility for SSA benefits. An order follows.

### ORDER

Upon consideration of the cross-motions for summary judgment submitted by claimant Flora Musgrove and the Secretary of Health and Human Services (Secretary), together with supporting and opposing memoranda of law and argument presented at a hearing on the motions, it is hereby ordered that:

(1) the motion of the claimant for judgment as to Supplemental Security Income (SSI) benefits is granted and judgment is entered in her favor;

(2) the motion of the claimant for judgment as to Social Security Disability benefits (SSA) is denied;

(3) the motion of the Secretary for judgment is denied;

(4) the decision of the Administrative Law Judge upholding termination of Supplemental Security Income (SSI) benefits is reversed and the case remanded to the Secretary for calculation of benefits due claimant and the payment of such benefits;

(5) the matter of SSA benefits is remanded to the Secretary for further determination and proceedings consistent with this opinion; including consideration of the prior determination of disability by the Pennsylvania Department of Public Welfare and an opportunity afforded claimant to present the records of the Pennsylvania Department of Public Welfare concerning its determination in 1973 of her disability.

### ON MOTION FOR RELIEF FROM JUDGMENT

■ On June 18, 1982, I issued a memorandum opinion and order in this action which reversed the decision of the Secretary of Health and Human Services (Secretary) terminating claimant Flora Musgrove's Supplemental Security Income (SSI) benefits.[1] *See Musgrove v. Schweiker,* 552 F.Supp. 104 (E.D.Pa.1982). In my decision I concluded, *inter alia,* that in a "termination" or "cessation" of benefits situation the burden of showing a disability remains on the claimant. If, however, a valid prior

1. In that memorandum opinion and order, I also remanded the separate matter of Social Security Disability benefits to the Secretary for further determination and proceedings.

determination of disability was made by the Secretary, *in the absence of any evidence amounting to a showing either of improvement in claimant's condition or a clear prior error in the prior determination of disability,* the claimant is entitled to a presumption of disability.

At the time of my decision, the Court of Appeals for the Third Circuit had not yet addressed the issue of the appropriate legal standard to be applied in cessation or termination cases. In my decision, I relied in large measure on a recent decision of the Court of Appeals for the Ninth Circuit, *Patti v. Schweiker,* 669 F.2d 582 (9th Cir. 1982). *See Musgrove, supra,* at 106–107.

Following my decision of June 18, 1982, the Third Circuit issued its opinion in *Torres v. Schweiker,* 682 F.2d 109 (3d Cir. 1982). The Secretary has moved for relief from the June 18 judgment, asserting that my prior decision is inconsistent with *Torres.* For the reasons which follow, the motion of the Secretary will be denied.

The crux of the Secretary's argument is that the *effect* of the rule of law set forth in my earlier decision is to shift the burden of proof to the Secretary, a result expressly held in *Torres* to be impermissible. While the Court's opinion in *Torres* does at first glance appear to cast doubt on the validity of my prior ruling, I conclude that the two decisions are not inconsistent.

In *Torres,* the claimant argued that a prior determination of disability by the Secretary in and of itself makes out a *prima facie* case of continuing disability and entitlement to benefits, thereby shifting the burden of proof to the Secretary to show

that the claimant is no longer disabled. *Torres, supra,* 682 F.2d at 111.

The *Torres* Court rejected such a shifting of the burden of proof in a termination proceeding and set forth three grounds in support: (1) language of the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976);[2] (2) the broad language of 42 U.S.C. § 423(d)(5) (1976)[3] "supportive of a reading . . . that would place the burden of proof as to the medical basis of a finding of disability on the claimant at all times"; *Torres, supra,* 682 F.2d at 111; and (3) the burden of proof in an initial application for benefits as set forth in a prior Third Circuit opinion, *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979).[4]

The specific language of the *Torres* holding provides the proper starting point for analysis: "[W]e hold that in a termination proceeding the claimant has the burden of proving that she is unable to return to her customary occupation." *Torres, supra,* 682 F.2d at 112. While the Secretary concedes that my prior opinion expressly held that the burden of proof in a termination proceeding was on the claimant, the Secretary argues that the imposition of a presumption of disability when there is an absence of any evidence to show improvement or error in the prior determination has the *effect* of impermissibly shifting the burden of proof to the Secretary. Such a view misconstrues the effect of a presumption.

"Presumptions are rules of law requiring the assumption of one fact upon proof of another in the absence of satisfactory evidence." *Sowizral v. Hughes,* 333 F.2d 829, 833 (3d Cir.1964); *see* W. Prosser, Law of Torts § 38 at 209 (4th ed. 1971):

---

**2.** "In order to establish initial and continued entitlement to disability benefits a worker must demonstrate that he is disabled" and "To satisfy this test the worker bears a continuing burden of showing, by [appropriate medical means]" that he is disabled. *Mathews, supra,* 424 U.S. at 336, 96 S.Ct. at 903. *Torres, supra,* 682 F.2d at 111.

**3.** "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence

thereof as the Secretary may require." 43 U.S.C. § 423(d)(5) (1976).

**4.** The initial burden of proof is on the claimant to show that she is unable to return to her customary occupation. *Rossi, supra,* 602 F.2d at 57. Once the claimant has made such a demonstration, the burden of proof shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy. *Id.*

They place upon the adverse party the "burden" of going forward and offering further evidence, in the sense that a verdict will be directed against him if he does not; but *they do not affect the ultimate burden of proof,* as to the preponderance of the total evidence required, once all the evidence is in. When persuasive evidence to the contrary is introduced, the occasion for the presumptions, as rules of law, is gone, and they simply cease to exist, "like bats of law flitting in the twilight, but disappearing in the sunshine of actual facts." All that remains is whatever inference from ordinary experience is to be drawn from the facts, which has whatever probative value the facts may justify.

*Id.* (footnotes omitted) (emphasis added); *Sowizral, supra,* 333 F.2d at 833, *quoting* Prosser on Torts, § 41 at 197 (2d ed. 1955).

Had the Secretary come forward with any "persuasive evidence" as to improvement in Mrs. Musgrove's condition or error in the prior determination, the presumption of disability would have ceased to exist. No such evidence was offered by the Secretary. *See Musgrove, supra,* at 109–110.

By contrast, in *Torres* the administrative law judge made a specific finding of "marked improvement" in claimant's condition following the initial determination of disability, which was supported by the record. *Torres, supra,* 682 at 112.

The cases cited by the *Torres* Court as supporting the view that the burden of proof in a termination proceeding remains on the claimant are also consistent with my holding in the previous Musgrove decision. *See Crosby v. Schweiker,* 650 F.2d 777, 778 (5th Cir.1981) (per curiam) and *Myers v. Richardson,* 471 F.2d 1265, 1268 (6th Cir. 1972).

In *Crosby,* the Court of Appeals for the Fifth Circuit stated that its holding did not conflict with a previous Fifth Circuit decision in which it had held that "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed *in the absence of proof to the contrary* that the condition has remained unchanged." *Crosby, supra,* 650 F.2d at 778, *quoting Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973) (emphasis added by *Crosby* Court). In *Crosby,* the evidence supported the ALJ's finding of improvement in claimant's condition.

In *Myers,* the Court of Appeals for the Sixth Circuit concluded that the Secretary may determine in a single hearing issues of the fact of claimant's initial disability as well as whether such disability has terminated. *Myers, supra,* 471 F.2d at 1267. In addition to resolving that issue in the affirmative, the Court also concluded that the burden of proof in both initial determination and termination proceedings is on the claimant. *Id.* The Secretary found that claimant Myers had been disabled for a certain period of time, but that the disability had terminated. *Id.* at 1266. Implicit in *Myers* is the finding by the Court that there was on the record evidence upon which the Secretary could have determined that claimant's condition had improved:

The appellant concedes in his brief that the *medical testimony in regard to the extent of the appellant's disability and the period of time for which he was disabled is in conflict.* As previously stated it is for the Secretary to resolve issues of fact and while a court might reach a different conclusion on the same evidence it is without the power to do so. We conclude that *there was substantial evidence of the termination of appellant's disability* to sustain the findings of the Secretary.

*Id.* at 1268 (emphasis added). Such evidence would eliminate the occasion for the presumption as a rule of law (the absence of satisfactory evidence) *see Sowizral, supra,* and *Prosser, supra,* and thereby dispel it.

In addition, without substantial evidence of the termination of appellant's disability, *i.e.,* improvement, or a showing of error in the initial determination of disability, the termination of benefits by the Secretary must *of necessity* be based on whim, caprice, or an impermissible relitigation of facts and conclusions already finally decided.

It should also be noted that the *Torres* Court based its ruling in part on its prior holding in *Rossi*, which set forth the correct burden of proof in an initial application for benefits.[5] Implicit in *Torres*, then, is the continued viability in this circuit of the *Rossi* "formula." If the standard set forth in *Rossi* is applied to the instant action, the result must be the same. Under *Rossi*, once the claimant meets her burden of proof that she is unable to return to her customary occupation, the burden shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy. *Rossi, supra,* 602 F.2d at 57. This shifting of the burden of proof to the Secretary "is consistent with the recognition that information as to the availability of jobs in the national economy is sophisticated information that most individuals do not have the resources to prove or disprove. The Secretary, on the other hand, has vast resources and information at his disposal." *Torres, supra,* 682 F.2d at 111–112. Considerations of fairness and policy underlie the shift in burden of proof. *Id.* at 112.

In the instant case, there was a specific finding by the ALJ that Mrs. Musgrove could not return to her customary occupation. Transcript at 23. Therefore, under *Rossi*, the burden was on the Secretary to show that Mrs. Musgrove had the capacity to perform specific jobs that exist in the national economy.

I conclude that, even under the standard set forth in *Rossi*, there is not substantial evidence on the record to support the ALJ's implicit finding that the Secretary had met his burden of proof and the articulated finding that Mrs. Musgrove could perform sedentary work.

As a result of the above, I will deny the motion of the Secretary for relief from the June 18, 1982, judgment in this action.