Virgie TURNER, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. L 83–107.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

Aug. 28, 1984.

Lesley M. Guyton, Legal Services Program, Lafayette, Ind., for plaintiff.

Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., Jason R. Baron, Trial Atty., Disability Litigation Branch, Social Security Div., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This action was brought under the provisions of 42 U.S.C. § 405(g) and 28 U.S.C. § 1361, and is now before the court upon the parties cross-motions for summary judgment.

The named plaintiff Virgie Turner was originally found entitled to disability benefits beginning February 3, 1971. Her benefits were subsequently terminated by the Secretary after it was determined that, by August 1982, plaintiff Turner had the capacity for light work and hence was no longer disabled. Plaintiff contends that this decision was not based on substantial evidence because there was no evidence to show either that her condition had improved or that the original decision finding her disabled was erroneous.

Plaintiff further argues that hers is not an isolated case of improper decision-making by the Secretary. Instead, plaintiff argues that the Secretary is using an inappropriate and unfair standard in determining when disability ceases under the Act. Thus, plaintiff seeked to expand her action to include all other disability claimants similarly situated. On May 13, 1984, this court certified a class which consists of:

> The class consists of all persons in the State of Indiana (a) who have been found eligible to receive benefits under the Social Security Disability Insurance (SSDI) and the Supplemental Security Income (SSI) programs, (b) whose benefits have been terminated as a result of the "continuing disability investigation" (CDI) or "continuing disability review" (CDR) process, (c) who could have filed a timely request for either administrative or judicial review as of September 27, 1983, and (d) who have not filed for judicial review of the decision to terminate their disability benefits.

The issue in this case is whether the Secretary can properly terminate social security disability benefits without any showing that the claimant's condition has improved to the extent that she is no longer "disabled" under the Act.

Plaintiff argues that the Secretary has abandoned the "medical improvement" standard[1] for determining when social security benefits should be terminated and now applies the current disability standard[2] to cessation cases. Plaintiff believes that allowing termination of benefits without a showing of medical improvements is contrary to the Act, the Secretary's regulations, and numerous court decisions.

The Social Security disability program was enacted in 1956 as an insurance program to compensate individuals so disabled as to be unable to engage in any substantial work activity. As originally passed, the projected cost of the program was modest. Congress felt it could be financed "over its entire future history by a tax rate of less than one-half of one percent." 128 Cong.Rec. 513120 (daily ed. Oct. 1, 1982) (remarks of Sen. Long). The cost of the program escalated from 59 million dollars in 1956 to an estimated 18.5 billion in 1982. *Id.* Likewise, the number of disabled workers and beneficiaries rose from 149,-850 in 1956 to an estimated 4,374,000 in 1982. *Id.*

Under Titles II and XVI of the Social Security Act benefits are paid to individuals who establish their "disability" under the Act. "Disability" under the Act means that the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

To satisfy this test, the individual must demonstrate that the "physical or mental impairment" is of such severity that

---

**1.** The "medical improvement" standard, formerly followed by the Secretary, required the Secretary to compare a social security recipient's current condition with that condition existing at the time of review and terminate benefits only if the recipient's condition had improved to the point that he could resume substantial gainful activity.

**2.** The "current disability" standard which the plaintiffs say the Secretary now follows in cessation cases allows benefits to be terminated without comparing past and present medical conditions; the standard is the same as used when initially reviewing a disability claim.

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Section 425(a) permits the Secretary to suspend disability benefits

On the basis of information obtained by or submitted to him [if he believes] that an individual entitled to benefits under section 423 of this title ... *may have ceased to be under a disability* .... For purposes of this subsection, the term "disability" has the meaning assigned to such title in section 423(d) of this term. (emphasis added).

Thus, the Act provides certain contingencies which, if occur, allow the Secretary to terminate benefits. Among the reasons for stopping payments is a finding that disability ceases, 42 U.S.C. §§ 423(a)(i) and 425.

In fact, the Secretary is required by Section 221(i)[3] of the Act to review every three years the continuing entitlement to disability benefits under Title II and to supplemental social security income benefits under Title XVI of the Act of all beneficiaries. These periodic reviews have been controversial, principally because of the standard of review that has been used by the Secretary. From 1954 until 1976, the Secretary of Health, Education and Welfare would not find that disability had stopped unless medical evidence showed that a claimant's condition had improved since it was last determined that he or she had a disability. The courts have consistently followed this standard. *Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996 (1st Cir.1975); *Hayes v. Secretary*, 656 F.2d 204 (6th Cir.1981); *Finnegan v. Matthews*, 641 F.2d 1340 (9th Cir.1981); *Leyva v. Harris*, 514 F.Supp. 1313 (D.C.N.Y.1981); *Timblin v. Harris*, 498 F.Supp. 1107 (W.D.Pa.1980); *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir.1973).

Faced with an expensive and nearly unmanageable program, Congress passed a series of amendments in 1980 designed to slow or halt the skyrocketing number of beneficiaries. Social Security Disability Amendments Act of 1980, P.L. No. 96–265, 94 STAT. 441, codified in part at 42 U.S.C. § 421(h). The 1980 amendments authorized the Secretary to review previously granted benefits to determine whether the claimants were still disabled. 42 U.S.C. § 421(h)(1).

In 1980, the Social Security Administration adopted a policy of finding that disability had stopped if it were found, based on new evidence, that the person was not disabled, as defined in law. In other words, the Secretary's position in determining that a disability had ceased became akin to an initial finding of no disability. *Kuzmin v. Schweiker*, 714 F.2d 1233, 1236 & n. 1 (3d Cir.1983). This policy is known as the "current disability standard."

In a statement contained in 45 Fed.Reg. 55566 (1980), the Secretary explained the revisions made in subpart P of Part 404 of the Regulations and included mention of "policies which we are now following in

---

**3.** Section 221(i) of the Act states in pertinent part:

(1) In any case where an individual is or has been determined to be under a disability, the case shall be reviewed by the applicable State agency or the Secretary (as may be appropriate) for purposes of continuing eligibility, at least once every 3 years, subject to paragraph (2); except where a finding has been made that such disability is permanent, such reviews shall be made at such times as the Secretary determines to be appropriate. Reviews of cases under the preceding sentence shall be in addition to, and shall not be considered as a substitute for, any other reviews which are required or provided for under or in the administration of this subchapter.

(2) The requirement of paragraph (1) that cases be reviewed at least every 3 years shall not apply to the extent that the Secretary determines, on a State-by-State basis, that such requirement should be waived to insure that only the appropriate number of such cases are reviewed ...

evaluating disability and blindness." Included among the 1980 policy changes were the following:

> In §§ 404.1579, 404.1594 and 416.994 we explain a *new policy* on when disability is considered to stop. At one time we would not find that disability or blindness had stopped unless the medical evidence showed that the person's condition had improved since we last determined that he or she was disabled. About three years ago, we changed this policy and began to find that disability or blindness had stopped if we found, on the basis of new evidence, that the person was not disabled or blind as defined in the law. (emphasis added). 45 Fed.Reg. 55566.

Likewise, in responding to public comments regarding social security cessation cases the Secretary stated:

> \* \* \* \* \* \*

> These recodified regulations make it clear that disability ends when current evidence shows that the individual is able to engage in SGA regardless of whether actual improvement can be demonstrated. 45 Fed.Reg. 55583.

It is clear that the Secretary has abandoned the medical improvement standard in favor of the current disability standard. The question becomes whether use of this new standard is legally permissible.

The Secretary was more successful at eliminating recipients then Congress ever anticipated. Instead of the 20 percent termination rate projected by the Social Security Administration, benefit terminations exceeded 40 percent. 128 Cong.Rec. S7558. In 1979 and 1980 the Social Security Administration reviewed 160,000 cases for continuing eligibility. The number rose to 357,000 in 1981, and to an estimated 567,000 in 1982 and 840,000 in 1983. Congress and the review process came under fire as a result. To alleviate some of the resultant hardship, Congress passed additional legislation in 1983, which continued the payment of benefits during the pendency of an appeal to an Administrative Law Judge.

Pub.L. No. 97–455, 96 STAT. 2498, Jan. 12, 1983, 42 U.S.C. § 423(g).

Following recognition of the 1980 policy change of the Secretary, many of the federal courts were confronted with the issue of the propriety of the Secretary abandoning the medical improvement standard. Courts addressing the conflict have overwhelmingly held the Secretary must base a decision to terminate benefits upon evidence that the condition of the beneficiary has improved. *Haynes v. Secretary of Health and Human Services*, 734 F.2d 284 (6th Cir.1984). This presumption of continuing disability requires that the Secretary produce evidence that the claimant's condition has improved, and in the absence of such evidence the claimant will be deemed to be still disabled; *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir.1973) (Once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged); *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930 (2d Cir.1984) (The clear implication of both the statute and the regulations, then, is that a comparative standard should be employed in deciding whether to terminate benefits. If the claimant's condition improves to the point where he or she is able to engage in substantial activity, benefits are no longer justified, and may be terminated by the Secretary); *Daring v. Heckler*, 727 F.2d 64 (3d Cir.1984) (Under *Kuzmin*, therefore, the burden has shifted to the Secretary to show either "that the initial disability determination was clearly mistaken", 714 F.2d at 1328, or to show that there has been sufficient improvement in the claimant's condition to allow claimant to undertake gainful activity); *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983) (initial determination of disability by Secretary gives rise to presumption at time of second hearing that claimant is still disabled and the Secretary is required to come forth with evidence to rebut such presumption). *Vaughn v. Heckler*, 727 F.2d 1040 (11th Cir.1984) (The 1971 determination that

Vaughn was disabled was presumed valid when the SSI program was initiated in 1974 ... Because of the presumptive validity of that decision, there can be no termination of SSI benefits until there is substantial evidence of actual improvement to the point of no disability); *Iida v. Heckler,* 705 F.2d 363 (9th Cir.1983) (Therefore, to terminate disability benefits, the Secretary has the burden of coming forward with evidence that the claimant's condition has improved since the initial disability determination); *Rush v. Secretary of Health and Human Services,* 738 F.2d 909 (1984), the Eighth Circuit adopted a medical improvement standard, stating therein that "We recognize that we are enunciating our presumption rule for the first time."; *Van Natter v. Secretary of Health, Education and Welfare,* No. 79–1439 (10th Cir.1981) (The record must show that her condition has improved whereby she is able to engage in substantial gainful activity). While these cases contain subtle distinctions, all are variations on a theme, i.e. that to terminate disability benefits, the Secretary had to compare the claimant's condition at the time of review with the condition that existed at the time benefits were awarded and could not merely consider "current medical evidence" concerning the claimant.

The Secretary argues that "the concept of cessation of disability is ... not the same as the concept of medical improvement." The Secretary points out that the legislative history of the 1983 amendment is rife with reference to the lack of any medical improvement standard in the Act. Senator Heinz pointed out that the amendment did not contain an improvement standard:

I want to point out that this bill has a serious omission: It fails to require that the Social Security Administration—before it may terminate benefits—show that an individual who was correctly awarded disability benefits has experienced significant medical improvement.

128 Cong.Rec. S13859 (daily ed. Dec. 3, 1982).

Senator Dole responded to Heinz's concerns with the following language:

I am certain that the medical improvement issue will be fully debated by the Finance Committee. While I cannot predict what action the Committee will take on this issue, I can assure the Senator I realize its importance ....

\* \* \* \* \* \*

The issue ... is an important one, and I agree that we should hold hearings on this subject. We will address the issue early in next year's session.

\* \* \* \* \* \*

I shall certainly want to join you in looking at the issue next year—as part of a comprehensive review of the disability program .... We are not yet at the point where all the concerns about medical improvement have been resolved ....

128 Cong.Rec. S13858, 13860 (daily ed. Dec. 3, 1982).

The Secretary phrases the question aptly:

Why would Congress consider addressing the medical improvement issue if the Act already mandates application of a medical improvement standard[?]

In fact, Congress took note of the conflict between the courts and the Secretary. Each legislative house has passed a bill which incorporates the "medical improvement" standard. The House passed the Social Security Disability Benefits Reform Act of 1984, H.R. 3755 on March 27, 1984. The Senate passed the Social Security Disability Amendments of 1984, S. 476, on May 14, 1984. Despite the extensive debate over the lack of medical standards and the lack of uniformity of decision, Congress was unable to resolve the issues in the waning days of the past session. Thus, the question has been left to the courts to decide.

Plaintiff asserts that a medical improvement standard is required by the case law, relying principally upon the Seventh Circuit's decision in *Cassiday v. Schweiker,* 663 F.2d 745 (1981). In *Cassiday,* the Seventh Circuit quoted with approval the bur-

den of proof analysis set forth in *Miranda v. Secretary of Health, Education, and Welfare,* 514 F.2d 996, 998 (1st Cir.1975):

> And once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed.

*Cassiday, supra,* 663 F.2d at 747.

The Secretary has taken the position that the Seventh Circuit's decision in *Cassiday,* neither supports the plaintiff's request for relief nor binds the Secretary in subsequent cases.

First of all, we find the Secretary's assertion that *Cassiday,* does not set forth a medical improvement standard to be untenable. As stated previously, *Cassiday* quoted with approval the standard set forth in *Miranda:*

> And once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. *This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity;* but it might also consist of evidence that claimant's condition is not as serious as was at first supposed. (emphasis added).

*Cassiday, supra,* 663 F.2d at 747.

The language emphasized clearly shows that the Seventh Circuit meant to adopt a medical improvement standard. This conclusion is buttressed by the number of federal courts that read *Cassiday* as imposing a medical improvement standard for disability termination cases. *See, DeLeon v. Secretary of Health and Human Services, supra; Torres v. Schweiker,* 682 F.2d 109 (3d Cir.1982); *Holden v. Heckler,* 584 F.Supp. 463 (N.D.Ohio 1984); *Person v. Secretary of Health and Human Services,* 578 F.Supp. 190 (E.D.Mich.1984); *Ve-*

*lazquez v. Heckler,* 586 F.Supp. 125 (S.D.N.Y.1984).

■ The Secretary seems to rely on the statement in *Miranda* cited by *Cassiday* which reads, "but it might also consist of evidence that claimant's condition is not as serious as was at first supposed, . . ." to show that *Cassiday* was not really enunciating a medical improvement standard at all. We do not agree. The Secretary's reading of this sentence effectively reads out the preceding sentence which states, "This will normally consist of current evidence showing that claimant has improved to the point of being able to engage in substantial gainful activity." We believe the proper way to read these two sentences so that they don't contradict each other is that the sentence, "but it might also consist of evidence that claimant's condition is not as serious as was at first supposed . . ." is a very limited, narrow exception to the medical improvement standard. We agree with the court in *Shaw v. Schweiker,* 536 F.Supp. 79 (E.D.Pa.1982) that this exception pertains "only to situations involving newly discovered evidence or a clearly erroneous interpretation of evidence in the initial granting of benefits." As Judge Van Artsladen in *Shaw* stated:

> At oral argument, counsel for the Secretary asserted the government's position that the standard of law for cessation cases set forth in *Miranda* is incorrect and that, in terminating benefits, the Secretary need only show that disability has ceased, not that substantial improvement has been made by the claimant. I find the government's position to be logically and legally unsound. Once a final determination of disability has been rendered, it is logically impossible for a claimant to become non-disabled without a change amounting to improvement (unless, of course, as recognized in *Miranda,* new evidence shows the original decision to be in error). After a final determination of disability, if a termination of benefits were effected without a showing either of improvement, or newly-discovered evidence, such a termination would of neces-

sity be based on whim or caprice or would constitute an impermissible relitigation of facts and determinations already finally decided. *Id* at 82–83.

We could not agree more.[4]

Secondly, the Secretary argues the plaintiff's reading of *Cassiday* is in conflict with the Supreme Court's statement in *Mathews v. Eldridge,* 424 U.S. 319, 336, 343, 96 S.Ct. 893, 903, 907, 47 L.Ed.2d 18 (1976) that "In order to establish initial and *continued* entitlement to disability benefits a worker must demonstrate that [he meets the statutory definition]. To satisfy this test the worker bears a *continuing burden* of showing [his disability] .... In order to *remain* eligible for benefits the *disabled worker must demonstrate* [his disability]." (emphasis added). There is no doubt that under the Act, the claimant "bears a continuing burden of showing ... that he has a physical or mental impairment," and that "in order to remain eligible for benefits he must demonstrate that he is disabled." *Id.* But we believe the Supreme Court's formulation of the relative burdens in cases brought under the Act is consistent with the medical improvement standard adopted by the majority of federal circuit courts. The medical improvement standard only requires the Secretary to come forward with evidence that the individual's condition has improved, and does not shift the ultimate burden of proof to the Secretary.

In the typical disability case, once the claimant has established a prima facie case by showing that his impairment prevents his return to his prior employment, the burden of production shifts to the Secretary who must produce evidence to show the existence of alternative employment which the claimant could perform considering not only his physical capability, but as well, his age, education, work experience, and training. It is also well accepted that the burden of proof as to the medical basis of a finding of disability remains on the claimant at all times. *Daring v. Heckler, supra.*

We believe in a termination case the relative burdens are as follows. The claimant has the initial burden of proving that he is still disabled. That is, it is incumbent upon him to show that his condition has not changed. As the court in *Kuzmin v. Schweiker, supra,* stated this is not an unreasonable burden for the claimant to handle.

> The requirement that the applicant introduce some evidence to show his or her condition remains unchanged or has worsened should not impose any undue hardship. Disability recipients are likely to remain under some medical treatment or supervision. Also, in appropriate cases, the recipient may rely on medical evidence previously introduced, *see Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996, 998 n. (1st Cir.1975), supplemented by the recipient's own testimony of the continuing condition to make out the *prima facie* case. 714 F.2d 1233 at 1237.

Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has sufficient medical improvement in the claimant's condition. It is not enough for the Secretary to show that a claimant can perform some gainful activity. It is incumbent upon the Secretary to compare an applicant's condition at the time of review with his or her condition at the time benefits were initially granted. That is, a comparative standard must be be employed in deciding whether to terminate an individual's benefits. If the claimant's condition improves to the point where he or she is

---

4. This view is supported by Chief Judge Urbom's opinion in *McAvoy v. Heckler,* 582 F.Supp. 1451 (D.Neb.1984). Chief Judge Urbom stated:

> As *Miranda* and *Weber* pointed out, the second prong of the test allows the Secretary to compare the current condition with the relative strengths or weaknesses of the evidence

on which the prior determination was made, at least where the condition was difficult to diagnose or benefits were granted on the basis of a tentative diagnosis. *Id* at 1453.

*See also, Benko v. Schweiker,* 551 F.Supp. 698 (D.N.H.1982); *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981).

able to engage in substantial gainful activity, benefits are no longer justified and may be terminated by the Secretary.[5] *DeLeon v. Secretary of Health and Human Services.* It is important to note, that although the presumption requires the Secretary to come forward with evidence of improvement in claimant's health, it does not shift the burden of proof to the Secretary in termination hearings. This burden is one the claimant must always carry.

The application of a medical improvement standard lends integrity and finality to the prior adjudicative process. *Musgrove v. Schweiker,* 552 F.Supp. 104, 106 (E.D.Pa.1982). To terminate benefits without a showing of medical improvement is to terminate on a "whim, caprice or an impermissible relitigation of facts and determinations already decided." *Id.* It should be noted that the difference between the medical improvement and current disabilities standards is of great importance to individual claimants. As the court in *Polaski v. Heckler,* 585 F.Supp. 1004 (D.Minn.1984) stated:

> In *Lopez v. Heckler, supra* [725 F.2d 1489] the Ninth Circuit directed the Secretary to apply the medical improvement standard on a class-wide basis. Subsequently, the agency began a review of the cases of those individual whose benefits had been terminated under the Secre-

---

**5.** It takes no great leap in logic to move from the basic medical improvement standard announced in *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981) to the presumption of continuing disability that has been adopted in most of the circuits. *See, Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983) (initial determination of disability by Secretary gives rise to presumption at time of second hearing that claimant is still disabled and the Secretary is required to come forth with evidence to rebut such a presumption); *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982) (once evidence has been presented which supports finding that given condition exists, which either qualifies or disqualifies claimant for benefits, it is presumed, in absence of proof to the contrary, that condition has remained unchanged); *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982) (initial determination that claimant was disabled gives rise to presumption at time of later hearing that claimant is still disabled and the Secretary is required to rebut presumption with evidence that claimant's condition has improved in interim); *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983) in termination proceeding, once claimant has introduced evidence that her condition remain essentially the same as it was at the time of the earlier determination, claimant has benefit of presumption that her condition remains disabling; Secretary then has the burden of going forward with evidence of medical improvement to rebut the presumption. *Haynes v. Secretary of Health and Human Services,* 734 F.2d 284 (6th Cir.1984) (... we hold that the Secretary's initial determination that Haynes was disabled gives rise to a presumption that she is still disabled); *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir.1983) (once evidence has been presented which supports a finding of existence of a given condition, which either qualifies or disqualifies applicant for social security disability benefits, it is presumed, in absence of proof to the contrary, that the condition has remained unchanged); *Rush v.*

*Secretary of Health and Human Services,* 738 F.2d 909 (1984) the Eighth Circuit adopted a medical improvement standard, stating therein that "We recognize that we are enunciating our presumption role for the first time in this case." At 916.

A number of courts here cited the Seventh Circuit's opinion in *Cassiday* as supporting the application of a presumption in disability termination cases. *See, Torres v. Schweiker,* 682 F.2d 109 (3d Cir.1982); *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930 (2d Cir.1984). More specifically, Circuit Judge Oakes in *DeLeon* stated:

> The view that the Secretary may simply disregard a prior finding that a particular medical condition is disabling is inconsistent with the case law in other circuits. *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir. 1982); *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981); *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981); *Hayes v. Secretary of Health, Education and Welfare,* 656 F.2d 204 (6th Cir. 1981); *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981); *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1st Cir.1975); *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir.1973). These cases stand for the proposition that, having once established that a particular condition is disabling, a claimant is entitled to a presumption that as long as there is no change in the condition itself, or in the governing statutes or regulations, neither will the statutory classification of disability be changed.

This court has followed the lead of those courts who have adopted the presumption of disability in *Manns v. Heckler,* 586 F.Supp. 1425 (N.D.Ind.1984). The actions taken here stop short of the presumption announced in *Mann.* Although this presumption could be logically engrafted on *Cassiday,* it is not necessary to do so in order to reach the result in this case.

tary's improper current disability standard. Of these individuals, 73% were found to be disabled under this new and proper standard. In addition, the termination rate in Oregon, covered by the *Lopez* decision, has been reduced to only 12.3% compared to the national average of 45.2%. Affidavit of Elena H. Ackel, attorney in the *Lopez* case. *Id.* at 1112.

A careful examination of the cases that remain consolidated reveals that the medical improvement standard has not been properly applied. In some cases the medical improvement standard has been explicitly rejected by the defendant Secretary. Thus all the consolidated cases should be remanded. On remand, the record in each case may be reopened by either party and fresh findings shall be made in each case based on the medical improvement standard enunciated in this Memorandum.

## REMAND

 Section 205(g) allows this court to remand this case for good cause or deficient full and fair hearing procedures. *Kelley v. Weinberger*, 391 F.Supp. 1337 (N.D.Ind.1974). The application of incorrect legal standards takes the case out of the substantial evidence rule. *Marcus v. Califano*, 615 F.2d 23 (2d Cir.1979). Thus, the application of incorrect legal standards constitutes good and sufficient cause for this court to remand this case to the Secretary. *Hankerson v. Harris*, 636 F.2d 893 (2d Cir.1980). Here, the record clearly illustrates that the issue of whether plaintiff is still disabled was neither evaluated nor investigated properly. On remand, it is incumbent upon the Secretary to compare each claimant's present physical and mental state with his condition at the time benefits were granted. That is, apply the judicially mandated medical improvement standard.

 Plaintiffs also request this court to retroactively reinstate their disability benefits. This court finds their position well taken. The court has determined that their disability benefits have been terminated under an incorrect legal standard, i.e. the current disability standard instead of the medical improvement standard. Thus, the plaintiffs benefits have been wrongfully terminated, and therefore, it is appropriate to reinstate their benefits. *Cassiday v. Schweiker, supra.* Accordingly, the Secretary is instructed to reinstate the plaintiffs' benefits until such time as she is able to show, according to the correct legal standards, that each individual plaintiff's disability has ceased. *Grant v. Secretary of Health and Human Services*, 586 F.Supp. 206 (D.Maine 1983); *Iida v. Heckler*, 705 F.2d 363 (9th Cir.1983).

## ORDER

IT IS ORDERED that this case be REMANDED to the Secretary to evaluate whether each claimant is still entitled to disability benefits according to the medical improvement standard set out by the court in this opinion.

A separate order shall enter in each case consolidated herewith for a REMAND consistent with the memorandum entered.

SO ORDERED.