Susan DARING, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

No. 83–1321.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 12, 1984.

Decided Feb. 2, 1984.

David A. Scholl, Lehigh Valley Legal Services, Inc., Bethlehem, Pa., for appellant.

Diane C. Moskal, Regional Atty., Michael P. Meehan, Asst. Regional Atty., Office of the Gen. Counsel, Dept. of Health and Human Services, Edward S.G. Dennis, Jr., U.S. Atty., Stanley Weinberg, Asst. U.S. Atty., Eastern Dist. of Pa., Philadelphia, Pa., for appellee.

Before ALDISERT, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

This is an appeal brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) from a decision by the Secretary of Health and Human Services denying the appellant's claim for disability benefits under Title II and Title XVI of the Social Security Act. Plaintiff Susan Daring filed applications for disability insurance benefits and Supplemental Security Income on October 11, 1978, which were granted on October 31, 1978. On March 4, 1981 the Office of Disability Operations of the Social Security Administration found that Daring's disability had ceased in February 1981 and that her entitlement to benefits ceased in April 1981.

The case was then considered *de novo* by an Administrative Law Judge (ALJ) who concluded, following a hearing, that Daring had the ability to perform her past work, and therefore was no longer disabled. After the Appeals Council denied Daring's request for review, and the Secretary's decision became final, Daring filed this action. Both parties filed motions for summary judgment; the magistrate recommended that the defendant's motion be granted; and the district court, adopting the magistrate's recommendation, found that the Secretary's decision was supported by substantial evidence and granted the defendant's motion for summary judgment.

### II.

Susan Daring was born on January 23, 1934 and completed school up to the tenth grade. She has held jobs as a gas station attendant, a cab driver, and a knitting mill examiner. She was last employed as a waitress for approximately three weeks in April 1981. Daring contends that she suffers continued disability as a result of a long history of mental illness, diagnosed as a schizophrenia, paranoid type and that, consequently, she is unable to engage in substantial gainful work.

The record confirms that Daring has a long history of mental illness diagnosed as paranoid schizophrenia and alcoholism. She was first admitted to the Jamestown State Hospital in North Dakota in August 1962 at the age of 28 and diagnosed as suffering from "schizophrenic reaction, paranoid type

.... prognosis is poor." Tr. at 162–63.[1] In August 1963 she was admitted to Yankton State Hospital for several months; the diagnosis was "schizophrenic reaction, acute catatonic type." Tr. at 156, 161. In May 1968 Daring was first admitted to Allentown State Hospital (ASH) with "paranoid ideation, threatening behavior and impaired judgment." Tr. at 141. She was described as "in an acutely disturbed condition ... very catatonic and depressed" and again diagnosed as schizophrenic, acute catatonic type. Tr. at 141, 142. She was released in July 1968 but readmitted in October 1969. She was noted to be "hallucinated, belligerent, and abusive," Tr. at 142, and "[for] a long period ... remained rather hostile, confused and had some paranoid ideations." Tr. at 146. The diagnosis was "schizophrenic reaction, chronic undifferentiated type." Tr. at 140. Daring was released in January of 1970, with a recommendation of regular outpatient follow-up. Tr. at 138, 146. In May 1973 Daring was again admitted to ASH, with auditory hallucinations; she was diagnosed as suffering from "schizophrenia, paranoid." Tr. at 137. She was discharged in June 1973 and "followed up by the local [Mental Health Center] for after care." Tr. at 134. Daring's next admission to ASH was in May 1976, with a diagnosis of acute psychosis and residual schizophrenia. Tr. at 128. In September 1978 Daring was once again admitted to ASH, with a diagnosis of schizophrenia, Tr. at 135; she was released in December 1978.

Undoubtedly in consideration of this record, plaintiff's 1978 application for disability benefits was promptly granted, and the Secretary determined that Daring had been disabled since January 10, 1978 because of "schizophrenia, paranoid type."

Plaintiff's multiple hospitalizations did not cease thereafter. She was admitted to Muhlenberg Medical Center in Bethlehem, Pennsylvania in October 1979; the admission history stated, "[S]he is depressed, ano-

rexic, sleepless, upset, fearful and having premonitions. Her schizophrenic process is pre-psychotic at this time." Tr. at 123. She was diagnosed as suffering from "depression with agitation" and "chronic paranoid schizophrenia." Id. Plaintiff was hospitalized at Muhlenberg again in December 1979 and discharged several days later, with follow-up care at the Lehigh County MH/MR. Tr. at 120. The admission history noted that she was "distraught, homicidal, suicidal and depressed," with "a long history of schizophrenia." Id. In January, February and again in June 1980, she was admitted to Muhlenberg with diagnoses of homicidal ideation, agitated depression, and chronic paranoid schizophrenia. Tr. at 77, 79, 88–90. She was admitted to Muhlenberg again in November 1980; the admission history noted that she was "depressed ... and unable to cope.... She has been drinking again. She has a history of reactive depression, schizophrenia, paranoid type, chronic which is in remission with medication at this time, and alcoholism." Tr. at 96. In July 1981, Daring was once again hospitalized for several days, with a diagnosis of "adult situational reaction" and "schizophrenia in remission on medication." Tr. at 119.

Notwithstanding the continuation of these hospitalizations, plaintiff was notified by the Secretary on March 20, 1981 that her medical condition was not disabling, that she became able to do substantial gainful work in February 1981, and that her benefits would be discontinued after April 1981. Tr. at 66–69.

At the hearing on October 28, 1981 plaintiff testified as to her sporadic work record, continued alcoholism and psychiatric problems. She testified that in recent years she had been involuntarily committed to psychiatric hospitals, Tr. at 33, and at other times she had voluntarily committed herself. Tr. at 34.[2] She also testified that contrary to

---

1. The Tr. designations are to the administrative record on file which has been denominated as Court Transcript.

2. The following colloquy is illustrative:

A. Well, I didn't like the way I was thinking and feeling, and I figured I'd better get myself in a hospital and get some hospital care before I got sick again, really sick again and I'd

the Social Security Administration determination that her situation improved in the beginning of 1981, in fact "it got worse". Tr. at 39.

The ALJ found that "plaintiff is no longer 'disabled'", that as of February 1981 "her psychiatric condition which had previously been severe had been brought under control by a medication and treatment regimen, so that her condition could be described as mild in nature"; that claimant regained the capacity to return to work as a waitress or to other work as a clerical; and that claimant is and has been capable of substantial gainful work since February 1981. Tr. at 13. The ALJ based his conclusion on the report of Dr. Seckinger that claimant's residual schizophrenia was in remission, and the October 1981 report by the Mental Health and Mental Retardation Center to which the claimant had been reporting on a regular basis that claimant was doing reasonably well, using her Triavil every other night, and making a satisfactory adjustment. Tr. at 12. The ALJ also stated that plaintiff's relationship with one of her numerous boyfriends "was primarily responsible for the claimant's severe emotional outbursts during recent years," *id.;* the ALJ apparently believed that because plaintiff divested herself of that relationship she would no longer be subject to the emotional reactions which made her disabled.

### III.

In reviewing final determinations by the Secretary after an administrative hearing, courts are bound by the Secretary's findings of fact if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g) (Supp. V 1981); 1383(c)(3) (1976). Substantial evidence has been defined as such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Dobrowolsky v. Cali-*

*fano,* 606 F.2d 403, 406 (3d Cir.1979). A person is disabled within the meaning of the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (1983); 42 U.S.C. § 1382c(a)(3)(B) (1976). Under the Act, the burden of proof as to the medical basis of a finding of disability remains on the claimant at all times, both in the initial proceeding to establish disability and in a subsequent termination proceeding. *Torres v. Schweiker,* 682 F.2d 109, 111 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983). If a claimant makes a showing that s/he is unable to return to a customary occupation, then the Secretary has the burden of proving that the claimant has the capacity to perform jobs that exist in the national economy. *Id.* at 111–12; *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979).

■ In our recent opinion in *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983), this court addressed the issue of proof in cases involving the cessation of benefits under the Social Security Act, specifically, the relevance of a prior finding of disability to the claimant's efforts to satisfy the burden of proof as to continuing disability. We held,

Basic principles of fairness as well as the need to provide both the appearance and fact of consistency in administrative process lead us to conclude that in a termination proceeding, once the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling .... The presumption of a continuing disability does not affect the ultimate burden of proof. It imposes on the Secretary only the bur-

have hallucinations or the cops would wind up bringing me in.
Q. Okay. Did that happen at all through 1980 or '81. Had you ever gotten to that—

A. Yes, I went through Crisis Intervention in 1980 to Allentown General.
Tr. at 34.

den of going forward with evidence to rebut or meet the presumption.

. . . .

Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity.

*Id.* at 1237. The Secretary's contention that "plaintiff has failed even to establish her *prima facie* case under *Kuzmin,*" Supplemental Brief for Appellee at 2, is remarkable. Plaintiff's own testimony that her condition has worsened would be sufficient. The continued episodes of hospitalization would be sufficient. Moreover, as discussed below, even the medical reports on which the Secretary relies show a continuing mental instability.

Under *Kuzmin,* therefore, the burden has shifted to the Secretary to show either "that the initial disability determination was clearly mistaken", 714 F.2d at 1238, *or* to show "that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." *Id.* at 1237. The Secretary does not contend that the original disability determination was mistaken. Thus our inquiry is limited to whether there is substantial evidence to support the ALJ's finding that the claimant "no longer has a severe impairment which prevents a return to her former work activity." Tr. at 13.

█ The Secretary contends that she has met her evidentiary burden to demonstrate that plaintiff's condition has improved through the medical reports of Drs. Holmberg and Seckinger. The Secretary and the ALJ stress that both doctors refer to plaintiff's schizophrenia as in remission. A complete reading of both reports shows, however, that despite some positive signs, neither doctor diagnosed plaintiff's medical condition as improved. For example, although Dr. Seckinger did report that the claimant's "insight and judgment were good" and that she "showed no illusions, delusions, or hallucinations, and she had no psychosomatic complaints", all symptoms which the ALJ stressed, Dr. Seckinger's concluding diagnosis was as follows:

The diagnosis is residual schizophrenia, 295.65 in remission. This person's history is the factor that leads one to see *that she has an emotional disability.* Stressful reactions can cause her to have psychotic reactions that are severe requiring hospitalization. It was only in February and the end of last year that she had serious threats and actually had psychotic episodes. Currently, she is functioning fairly well but is very sensitive to environmental stresses.

Tr. at 106 (emphasis added). Moreover, although the Secretary in her Supplemental Brief states that Dr. Holmberg, her treating physician, reported that by February 13, 1981, plaintiff had no problems with her thought processes and content, and that although she had some "hallucinations in the past she has not had any in the previous two years (Tr. 82)", Supplemental Brief for Appellee at 2, the Secretary failed to mention Dr. Holmberg's prognosis in the same report, which was "Guarded, since this is a chronic problem *that has not improved remarkedly despite medication and psychotherapy.*" Tr. at 82 (emphasis added).

Not only was the Secretary in error in stating in her brief to this court that "[t]he only evidence that plaintiff's condition has remained the same is her own testimony," Supplemental Brief for Appellee at 2 n. 1, but the medical reports on which the Secretary relies do not show any significant improvement in claimant's underlying condition. Furthermore, it is not disputed that in the 27 month period between December 1978 when the claimant was first determined to be disabled and February 1981 when the Secretary determined that claimant's disability has ceased, the claimant was hospitalized on six different occasions for psychotic episodes.

█ The relevant inquiry with regard to disability is whether claimant's condition prevents her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A) (1976). *See Kuzmin v. Schweiker,* 714 F.2d at 1236;

*Torres v. Schweiker,* 682 F.2d at 110. Neither doctor made any statement which would support the ALJ's conclusion that the claimant "is and has been capable of substantial gainful work since February 1981," and the Secretary has cited no such medical opinion. Instead the Secretary relies on the vocational expert who testified at the hearing. However, the Secretary's statement in her brief that "a vocational expert testified that even with her impairments plaintiff retained the ability to perform several of her past jobs (Tr. 59)", Supplemental Brief for Appellee at 2–3, is, at best, misleading. In fact, the vocational expert testified to the contrary. Throughout his testimony, the vocational expert distinguished between the claimant's ability to get a job initially, stating that "she makes a good enough personal presentation," Tr. at 60, and her ability to keep that job. He thought the claimant "could *get* employment" but had "severe doubts whether or not she could *maintain* those jobs." Tr. at 59 (emphasis added). He continued, "What I'm trying to say is I think she could get employment. Whether or not she could keep employment with her past history *and current problems* is at best questionable, I think." *Id.* (emphasis added).

■ When asked by claimant's counsel how long Daring could maintain a job, the vocational expert stated:

A. Well, that's really impossible to say. The testimony and exhibits indicate that she was hospitalized in July on an involuntary commitment. That she had herself admitted for one day since that time another hospitalization. The evidence is well documented that she'd been in and out of the psychiatric institutions for at least 19 years, several times in 1980. Based upon her history it's quite possible to assume that she's going to continue the pattern that she's done in the past.

Tr. at 61. In evaluating both the medical evidence and the testimony of the vocational expert, we are obliged to read that evidence in its totality, rather than to take bits and snatches of it out of context, as we regretfully conclude both the ALJ did in his opinion and the Secretary did in her brief.

■ There is also no basis to support the ALJ's reliance on his own impressions that Daring's relationship with her former boyfriend had been "*primarily responsible* for the claimant's severe emotional outbursts". Tr. at 12 (emphasis added). As the record shows, claimant's severe emotional outbursts continued through several husbands and additional boyfriends. It appears from the medical opinions that any stressful situation is likely to trigger a psychotic episode. The ALJ's hypothesis that this will no longer happen once this particular boyfriend is out of the picture is pure speculation, amply rebutted by the record. Also, the ALJ's observation that claimant's "demeanor at the hearing was impressive and her testimony was given in an intelligent and forthright fashion," *id.,* carry little weight in cases such as this involving medically substantiated psychiatric disability.[3] *See Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983). *See also Kelly v. Railroad Retirement Board,* 625 F.2d 486, 494 (3d Cir.1980).

## IV.

■ We conclude that there is no substantial evidence to support the ALJ's conclusion that Daring was no longer disabled and that she has been capable of substantial gainful employment since February 1981. For the foregoing reasons, we will vacate the judgment of the district court and remand this case to the district court with directions it be remanded to the Secretary for proceedings consistent with this opinion.[4]

**3.** We note that this is the same ALJ who this court found in another recent case had ignored the medical conclusions in favor of his own conclusion that a claimant had no emotional disability. *See Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983). As these cases make abundantly clear, this approach cannot

be sustained under the "substantial evidence" standard of review which we are bound to apply.

**4.** Appellant's Supplemental Brief suggests that if we do not reverse and direct resumption of benefits immediately, we should at least direct

that benefits be continued pending a final dis-
position. Although this may be an appropriate
case to do so, we have been referred to no
statute, regulation, or precedent for an appeals
court to issue an order directing continuation

of benefits. It is an issue which appellant may
raise with the district court on remand if it will
not unduly delay final administrative disposi-
tion of this case.