Hester McLEAN

v.

**Margaret HECKLER, Secretary U.S. Department of Health and Human Services.**

**Civ. No. 83–3429.**

United States District Court, E.D. Pennsylvania.

Report—Recommendation April 13, 1984.

May 14, 1984.

Louis Rulli, Community Legal Services, Philadelphia, Pa., for plaintiff.

Edward Ellis, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM SUR ORDER APPROVING MAGISTRATE'S RECOMMENDATION

JOSEPH S. LORD, III, Senior District Judge.

This case presents an appalling example of sheer bureaucratic dishonesty. The evidence shows overwhelmingly that the claimant is totally disabled and for the ALJ to hold otherwise is an indulgence in the most blatant hypocrisy. If the purpose of the United States Department of Health and Human Services is to crush defenseless human beings, as it seems to be, it would succeed unless in cases like this, courts interposed a protective arm.

I am therefore approving the Report and Recommendation of the United States Magistrate.

## ORDER

Now, this 14 day of May, 1984, after careful and independent consideration of the cross-motions for summary judgment, and after review of the entire administrative record and the Report and Recommendation of the United States Magistrate, to which no objections have been filed, IT IS ORDERED that:

1. The Report and Recommendation is Approved and Adopted as the Opinion of the Court.

2. Plaintiff's Motion for Summary Judgment is GRANTED.

3. Defendant's Motion for Summary Judgment is DENIED.

4. This matter is REMANDED to the Secretary with directions that she reinstate the plaintiff's disability benefits.

## REPORT—RECOMMENDATION

RICHARD A. POWERS, III, United States Magistrate.

Plaintiff, Hester McLean, brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), as amended, seeking review of the decision of the Secretary of Health and Human Services (Secretary) to terminate her disability insurance benefits.

The plaintiff is a fifty-six (56) year old female and a resident of Philadelphia. She has received a marginal education and has been employed as a domestic worker in the past.

On the basis of her October 21, 1980 application for Supplemental Security Income (SSI), plaintiff was found to be disabled due to a long history of chronic pancreatitis. (tr. 69). In April, 1982, the Social Security Administration terminated

plaintiff's SSI benefits because then current medical evidence showed her condition to have improved such that she could return to substantial gainful employment, and the Administration, therefore, determined that plaintiff's disability had ceased as of April, 1982.

On September 2, 1982, a *de novo* hearing was held before an Administrative Law Judge (ALJ) at which the plaintiff appeared with assistance of a paralegal from Community Legal Services. In a decision dated December 22, 1982, the ALJ determined that plaintiff could perform her past relevant work and that her disability ended in April, 1982. (tr. 21). The Appeals Council denied the plaintiff's request for review on May 23, 1983, thereby making it the final decision of the Secretary. (tr. 6). The plaintiff then instituted the instant action in this Court, and both parties have moved for summary judgment.

On review of the Secretary's decision by this Court, any findings of fact made by the Secretary must be accepted as conclusive provided that they are supported by substantial evidence, that is by "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris*, 642 F.2d 700, 704 (3 Cir.1981), citing *Lewis v. Califano*, 616 F.2d 73, 76 (3 Cir.1980); 42 U.S.C. § 405(g). Therefore, the sole issue before this Court is whether the Secretary's decision is supported by substantial evidence. For the reasons discussed below, I shall recommend that the Secretary's motion be denied and the plaintiff's benefits be reinstated since the Secretary's decision is not supported by substantial evidence.

The medical evidence of record, coupled with the testimony of the plaintiff, clearly demonstrates a history of chronic pancreatitis, rheumatoid arthritis, reoccurring duodenal ulcer and irritable bowel syndrome. (tr. 186–187). A February 15, 1982 report by Dr. Leonard M. Zemble, the plaintiff's treating physician, verified that plaintiff is beset with these ailments. (tr. 164). A report submitted on May 20, 1982 noted that plaintiff was:

... under treatment for hypertensive heart disease, irritable bowel syndrome and degenerative arthritis. She has persistent pain and stiffness of her knees, especially the left, pain of the left shoulder and wrist with weakness of her left hand grip. She walks with difficulty secondary to degenerative joint disease of her knees and is unable to lift secondary to degenerative joint disease of the hands and wrists. She is plagued with periodic episodes of incapacitating diarrhea .... It is my opinion that she is totally disabled and unable to work. (tr. 176–177).

Also, under Dr. Zemble's care, plaintiff takes the following medications: Darvocet, Tagamet, Valium, Periactin, Aldomet, Gaviscon, Lomotil and Eye Drops. (tr. 183).

A pancreatic ultrasound performed on March 29, 1983 noted probable identification of calcifications within the pancreatic head and body, non-uniform intrahepatic echo pattern and prominent portal vein. The report concluded with the following comment:

The altered intrahepatic pattern is somewhat disturbing. This type can be seen in metastatic liver disease, although the possibility of marked cirrhotic distortion must be considered. (tr. 195).

All of this evidence of chronic pancreatitis and duodenitis was supported by the following testimony of the plaintiff:

QUESTIONING OF THE PLAINTIFF BY ADMINISTRATIVE LAW JUDGE:

Q  Now tell me, Mrs. McLean, how do you feel on the average now as compared to how you felt on the average say two years ago? Do you feel about the same or do you feel better or do you feel worse?

A  Worse. The older I get the worse.

Q  Now when you say you feel worse, what are your symptoms when you say you feel worse?

A  Well, two years ago I could get around better and do more, but now—

Q  What hurts or what bothers you that you can't get around better?

A For one thing, I can't eat and not eating and all I stays weak.

Q You mean you don't have an appetite or do you just don't want to eat?

A I wants to eat, when I eat, it goes right through me and sometimes it doesn't warn me.

Q Is that more now than what it used to be?

A Yes, and if I force it, I vomit, and then I'm real sick then, then if I vomit and threw up—

Q How much do you weigh right now?

A I, last time I was to the doctor, I weighed 88 pounds.

Q 88 pounds?

A Uh-huh. And when I vomit, the rest of the day I can't eat, cause my stomach, and it seemed like when I do, see all right here this side—

Q Your left side?

A Yeah. A great knot comes there. It starts to swell and a knot comes.

Q So you have pain in the left side of your stomach?

A When I eat and pretty soon I'll go to the bathroom. I keep trying and I start throwing up and I say well let's go lay down.

Q On the average how many times a week do you throw up or vomit?

A If I try to eat and it won't stay down, everyday if I try. And then sometimes I drink juice and eat a lot of fruit and sometimes it will stay. But like having food and stuff like that it just makes knots and things come in my stomach and pretty soon I'm on the toilet.

Q When was the last time you threw up?

A Yesterday morning. I made a bowl of soup and I ate part of it and I tried to eat the rest and I started gagging and it came right back. I try to drink milk and it makes my stomach swell up.

Q Did you eat any turkey. Did you try to eat some turkey?

A I ate a little bit, by the time it got to my stomach a knot came in, gas or whatever.

Q Did you throw it up or did it pass through?

A It passed through. And sometimes if I do eat something and it swells my stomach up, I take a laxative or something and get it out or my stomach keeps swelling and swelling and I keep hurting. (tr. 47–49).

The record also demonstrates that plaintiff suffers from hypertensive cardiovascular disease (tr. 176), with episodes of subendocardial infarction occurring as recently as March, 1983. (tr. 216). Plaintiff was admitted to Metropolitan Hospital Post Cardiac Catherization Unit on March 26, 1983 with a previous subendocardial infarction three (3) weeks prior. The records demonstrate that at that time the plaintiff experienced crushing substernal chest pain radiating to the jaw and left arm, also associated with shortness of breath and pedal edema. (tr. 216). At the hearing, plaintiff testified that she is still suffering from these symptoms. (tr. 51–52).

Plaintiff is also under treatment for degenerative rheumatoid arthritis, persistent pain and stiffness of her knee joint and weakness in her left hand grip. (tr. 176). These conditions markedly limit the plaintiff's movement and cause her to unexpectantly fall to the ground. (tr. 53–54). This testimony was further corroborated by plaintiff's witness, Ms. Dolly Long and the medical evidence of record. (tr. 170–171).

Despite the overwhelming medical evidence of record, the ALJ concluded that plaintiff did not have a severe impairment and therefore was not under a disability as defined in the Social Security Act. (tr. 21).

Although a prior finding of eligibility does not in and of itself establish a *prima facie* case of continuing disability, once the claimant has introduced evidence that his condition remains essentially the same as it was at the earlier determination, the claimant is entitled to the benefit of a presumption that his condition remains disabling. *Kuzmin v. Schweiker,* 714 F.2d

1233, 1237 (3 Cir.1983). In *Kuzmin,* the court stated that the applicant is required to introduce some evidence to show his condition remains unchanged or has worsened. *Id.* at 1237. The Secretary then has the burden of going forward with the evidence to rebut or meet the presumption by showing that there has been sufficient improvement in the plaintiff's condition to allow the plaintiff to undertake gainful activity. *Id.* at 1237.

It cannot be seriously disputed that plaintiff has indeed established her *prima facie* case of disability. The plaintiff's testimony as set out above, coupled with the medical evidence of record, clearly illustrates plaintiff's disabilities. Plaintiff's treating physician's report of May 20, 1982, documents the continuation of the severity of plaintiff's impairments and certifies her as still "totally disabled and unable to work." (tr. 176–177). Moreover, evidence of medical deterioration was further bolstered by the testimony of plaintiff's witness, Dolly Long, a friend who sees the plaintiff twice a week. (tr. 55–58). Thus, the plaintiff is entitled to the benefit of a presumption that her condition remains disabling, *Daring v. Heckler,* 727 F.2d 64 at 68 (3 Cir. 1984), and the burden has shifted to the Secretary.

▆▆▆ Despite this burden, the ALJ failed to substantiate his finding that plaintiff's impairment was now only "uncomfortable". (tr. 21). Such a finding is baseless and has no support in the record. It is well-settled that an ALJ may not reject the treating physician's opinion unless he can identify other medical evidence of record refuting that opinion. *Rossi v. Califano,* 602 F.2d 55 (3 Cir.1979). Where no such contradictory evidence exists, an ALJ is obliged to find the claimant disabled. *Smith v. Califano,* 637 F.2d 968 (3 Cir. 1981). Additionally, it is an error of law to reject the treating physician's opinion without adequate explanation. *Schaaf v. Matthews,* 574 F.2d 157 (3 Cir.1978).

▆▆▆ Here the ALJ has failed to articulate any basis or explanation for ignoring the opinion of the one (1) medical professional who has continuously treated the plaintiff's impairments and to whose opinion, as a matter of law, considerable weight is due. *See, Bryant v. Schweiker,* 537 F.Supp. 1 (E.D.Pa.1982). One can only conclude that the ALJ either chose to substitute his own medical judgment for that of the treating physician, or he chose to disregard substantial medical evidence without explanation. In either case, the ALJ's actions constitute a clear error of law. *Smith v. Schweiker,* 671 F.2d 789 (3 Cir. 1982); *Rossi v. Califano,* 602 F.2d 55 (3 Cir.1979); *Cotter v. Harris,* 642 F.2d 700 (3 Cir.1981).

▆▆▆ Additionally, the ALJ erroneously rejected plaintiff's subjective complaints of pain. Plaintiff has testified at length to an inability to eat, vomiting, gagging, incapacitating diarrhea and disabling stomach pain and swelling. (tr. 48–50). It has been held that where subjective testimony as to pain is corroborated by competent medical evidence, it is entitled to great weight. *Smith v. Califano,* 637 F.2d 968 (3 Cir. 1981). Here, plaintiff's complaints are directly attributable to chronic pancreatitis and duodenitis, conditions which are verified by all of the physician's reports. Thus, the ALJ's summary rejection of such competent evidence was clearly in error.

Therefore, on the basis of the medical evidence and testimony in this case, I find that the Secretary's determination of nondisability is not supported by substantial evidence. I further find that there is abundant evidence in the record to support the reinstatement of plaintiff's disability benefits.

Accordingly, I make the following

## RECOMMENDATION

Now, this 13th day of April, 1984, IT IS RESPECTFULLY RECOMMENDED that the plaintiff's motion for summary judgment be GRANTED, that the Secretary's motion for summary judgment be DENIED, and that this matter be REMANDED to the Secretary with the direction that

she reinstate the plaintiff's disability bene-fits.