**Bernadine BOYD, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. Civ.–84–328C.**

United States District Court, W.D. New York.

Jan. 29, 1986.

Sharon Anscombe Osgood, Kenmore, N.Y., for plaintiff.

Salvatore R. Martoche, U.S. Atty. (Joseph B. Mistrett, Asst. U.S. Atty., of Counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

This is an action brought under section 205(g) of the Social Security Act, as amended, to review a final determination of the Secretary of Health and Human Services, which denied plaintiff's application for a period of disability and widow's disability insurance benefits. Plaintiff filed her application for widow's disability insurance benefits on March 2, 1983. After plaintiff was initially denied these benefits by the Secretary, she requested and was granted a hearing before an Administrative Law Judge [ALJ], where she proceeded without legal representation. After the ALJ affirmed the earlier decision of the agency and the Appeals Counsel did not overturn this decision, plaintiff filed this appeal. Thereafter, plaintiff was granted *in forma pauperis* status, and the court assigned counsel. Both sides move for judgment on the pleadings.

In summary, the ALJ found at the time of her hearing, plaintiff was a widowed 50-year-old woman suffering from chronic undifferentiated schizophrenia or schizoaffective disorder. The ALJ concluded, however, that plaintiff's impairment did not satisfy any of the listings in Appendix I and was, therefore, not under a "disability," as defined in the Social Security Act during the pertinent time.

Plaintiff's attorney argues that plaintiff meets both the old and new Appendix I listings, that plaintiff qualifies for widow's benefits because she is unable to perform any gainful activity even if plaintiff did not meet the listings, and that the ALJ failed to apply the correct eligibility standard. *Shaw v. Schweiker*, 730 F.2d 462 (6th Cir. 1984).

My review of the record is as follows. At the time of her hearing, plaintiff was a 50-year-old woman who has suffered from chronic undifferentiated schizophrenia for about 20 years (Tr., p. 26). She has no relevant work experience and has very limited ability to read and write (Tr., pp. 53, 115), and she attended school only through the eighth grade (Tr., p. 99).

Plaintiff's testimony at the hearing clearly evidences her psychological problems. At that time, she could not recall her place of birth (Tr., p. 32), her date of marriage (Tr., p. 33), the year of her daughter's birth (Tr., p. 35), her years of treatment at Buffalo General Hospital (Tr., p. 39), her years of in-patient hospitalization at the State Hospital or Buffalo General Hospital (Tr., p. 40), the name of the psychiatric clinic she was presently attending (Tr., p. 41), the name of her doctor (Tr., p. 41), the type of operation she had in 1974, and who did this surgery (Tr., pp. 54–55).

Plaintiff was hospitalized at the State Hospital on three or four occasions, at Buffalo General Hospital twice, attended day treatment at Buffalo General Hospital, and had been in treatment since she first got sick in the 1960s (Tr., pp. 39–41). Plaintiff underwent brain surgery for an aneurysm in 1974 and in 1983 sought care for recur-

ring and severe headaches (Tr., p. 132). At the time of the hearing, plaintiff was in treatment at a local clinic and takes 200 mg. of Thorazine three times a day, which was prescribed by her present psychiatrist, Dr. Schim (Tr., pp. 44–45). Prior to seeing Dr. Schim, plaintiff was treated for a long period of time by a Dr. Lampa (Tr., pp. 22, 47) and was also seen by Dr. Park about four times in late 1982 and early 1983 (Tr., pp. 22, 111).

Plaintiff testified that, for the last 20 years or so, she has spells of depression and is easily confused (Tr., pp. 55–58). She describes her only activities as occasionally going to church, shopping at a local thrift shop, watching television, and socializing with her daughters, who help her with her daily needs (Tr., pp. 51, 61–62, 64). Although plaintiff has a driver's license, she walks wherever she goes and does not use the bus except with her daughter (Tr., pp. 36–38). When plaintiff is very depressed, she avoids being seen by others (Tr., p. 109).

The above evidence is essentially supported by all other evidence in the record. Plaintiff's daughter testified that her mother's symptoms are, in fact, more intense than depression and confusion, comparing her mother to the patient in *Three Faces of Eve,* the movie about a woman with multiple personalities (Tr., pp. 60–62).

The Social Security staff noted plaintiff's problems. On March 2, 1983, a staff person indicated that plaintiff's general appearance was that of an ill person, slow physically and mentally, with no animation (Tr., p. 102). Again on May 1, 1983, plaintiff was noticed not to look well and was tense and argumentative (Tr., p. 106).

With respect to the opinion of plaintiff's various psychiatrists, I note that Dr. Park, who examined plaintiff four times in late 1982/early 1983, said that plaintiff had a longstanding psychotic illness dating back to 1967 and characterized her condition by "psychotic disorganization, auditory hallucinations, paranoid ideations, etc." (Tr., p.

111). Although Dr. Park believed that plaintiff's condition had been in partial remission for a number of years, he did believe that she had "marked residual problems" and prescribed Thorazine and Elavil (Tr., p. 111). Dr. Park also noted plaintiff's lack of spontaneity, unproductive speech, "blunted" mood, inadequate energy level, and inadequate cognitive functioning (Tr., p. 114).

Dr. Park also signed a functional assessment form indicating that plaintiff's nutrition and diet need further work, that her clothing was not always appropriate for the weather and was frequently mismatched. He noted, as did other evidence, that plaintiff sometimes had drastic mood swings, often resulting in her losing control of her temper, and had limited trust in others (Tr., pp. 115–16).

Finally, plaintiff's treating physician, Dr. Schim, said that plaintiff's condition is poor. She is a "schizophrenic" who is "fearful of people," emotionally unstable, "paranoid with poor reality testing." Dr. Schim found that plaintiff's ability to make occupational adjustments" to be "very poor" because she "becomes agitated under stress" and "irrational" (Tr., pp. 141–46). The record is replete with such opinion.

■ It is clear that the ALJ both distorted and ignored evidence in the instant record in coming to his decision. Here, virtually all of the examining physicians agree that plaintiff is incapable of doing even low stress gainful activity. Therefore, the Secretary committed error in finding otherwise. *See McLaughlin v. Secretary,* 612 F.2d 701 (2d Cir.1980).

■ The ALJ also failed to fulfill his duty of developing the record, given plaintiff's *pro se* status at the hearing as well as her serious mental problems. *See e.g., Cruz v. Secretary,* 593 F.Supp. 45 (S.D.N.Y.1984). Here, despite plaintiff's testimony about depression and confusion, the ALJ failed to ask any questions about the

frequency of these problems, their duration, etc. Furthermore, despite the fact that plaintiff said, on the record, that she had had operations on her back and head, the ALJ failed to ask any questions about these conditions or to subpoena records about either the operations or plaintiff's stays at various psychiatric facilities.

■ Finally, I find that the Secretary failed to apply the proper standard in inquiring whether, in accordance with 42 U.S.C. § 423(d), plaintiff was capable of doing "any gainful activity." In making his inquiry, the ALJ merely examined whether plaintiff satisfied Appendix I. This constitutes reversible error here because there is no evidence in the record that plaintiff is capable of performing gainful activity of any kind. In *Shaw v. Schweiker, supra* at 464, the court said:

> Under 42 U.S.C. § 423(d)(2)(A), a wage earner is considered disabled if his impairment precludes him from engaging in *any substantial* gainful activity. Under § 423(d)(2)(B), however, a widow applying for benefits on the basis of her spouse's record as a wage earner must show that she suffers from an impairment deemed by the Secretary to preclude her from engaging in *any* gainful activity. Moreover, in assessing a wage earner's ability to work, the Secretary must consider the claimant's age, education, and work experience. By contrast, a widow's claim of disability is judged solely by medical criteria.

As in so many of these Social Security cases, this case represents yet another example of "sheer bureaucratic dishonesty" by the agency which this court cannot permit. *Cf. McLean v. Heckler*, 586 F.Supp. 1364, 1365 (E.D.Pa.1984). Therefore, and for all of the above reasons, the Secretary's decision is reversed. I find the plaintiff disabled with an onset date of 1968. This matter is remanded to the Secretary for the calculation of benefits.

So ordered.